### NORWOOD v. LASSITER.

#### (Filed March 3, 1903.)

1. MORTGAGES—*Trust Deeds—Estoppel—Sales—Minor—Election Infants.*

   Where a minor, after attaining his majority, accepts the proceeds of a sale under a deed of trust, he is estopped from disputing the validity of the sale on the ground that the trustee sold without a previous request from the creditor as required by the trust deed.

2. ADVICE OF COUNSEL—*Attorney and Client—Estoppel—Mortgages—Election—Infants—Minor.*

   Where a minor, after attaining his majority, accepts the proceeds of a sale of land under a deed of trust, he is estopped from denying the validity of the sale, though he was advised by counsel that he would not be estopped thereby.

ACTION by Arthur Norwood against S. M. Lassiter and others, heard by Judge *George H. Brown* and a jury, at March Term, 1902, of the Superior Court of NORTHAMPTON County. From a judgment for the defendants, the plaintiff appealed.

*Day & Bell, Thomas N. Hill, Thomas W. Mason, F. H. Busbee & Son,* for the plaintiff.

*B. B. Winborne, B. S. Gay, S. J. Calvert* and *W. E. Daniel,* for the defendants.

WALKER, J. This action was brought for the purpose of having a deed cancelled, and for the recovery of the possession of one of the tracts of land known as the "Josey tract," therein described.

It appears that on the 8th day of September, 1880, W. S. Norwood and wife executed to W. C. Bowen a deed of trust for said land, which was then the property of Mrs. Norwood, to secure a debt of $3,000 owing by her husband to W. H. Farmer. The deed contained a power of sale, which was to be exercised only upon the request of Farmer. In the year 1883 Norwood and his wife died, the latter leaving a will, in which she devised the "Josey tract" to the plaintiff, and he is the owner thereof, unless he has in some way lost his title, by reason of the facts hereinafter stated.

W. C. Bowen, on January 12, 1885, without having been requested so to do by W. H. Farmer, as plaintiff alleges, sold the land under the power of sale, and it was purchased by the defendants, E. Baugham and E. E. Lassiter.

The principal question in controversy between the parties was whether Farmer had before the sale requested Bowen to sell the land, and an issue presenting this question was submitted to the jury.

There was evidence tending to show that W. H. Farmer

was present at the sale which was made by Bowen, the trustee, and "did not then and there give any notice of his objection to it, but bid himself on the land"; and the Court charged the jury with reference to this evidence, that if they found the facts to be in accordance therewith, they should give their verdict in favor of the defendants; otherwise for the plaintiff. The jury returned a verdict for the defendants upon the issue submitted, and judgment was entered in accordance therewith.

In order to show that the preliminary request for the sale of the land had not been made by Farmer, the plaintiff proposed to ask his witness, Granville Josey, if he had seen Farmer and Bowen talking with each other before the sale, and if he did not hear Farmer say to Bowen, "I don't want it sold." Plaintiff then proposed to prove by this witness, "that immediately, but after Bowen was out of hearing, the witness asked Farmer what they had been talking about, and that Farmer replied that they had been talking about the sale of the Josey tract of land." This evidence was objected to by defendant, and was excluded by the Court. Plaintiff then proposed to prove by one of his witnesses, Mrs. Etheridge, that Farmer frequently told her "that he did not want the land to be sold, and did not authorize Bowen to sell it, and that he had so instructed Bowen." Bowen was not present at the time of the alleged conversation. This evidence was also excluded by the Court upon objection by defendants. Plaintiffs entered exceptions to these rulings of the Court, including the instruction to the jury, in apt time.

We think that the rulings of the Court upon the testimony were all correct, as the evidence proposed to be elicited was manifestly hearsay; but for the reason which will presently appear, it is not, in our opinion, necessary that we should pass upon these matters nor upon the exception of the plaintiff to the charge of the Court, given upon the issue submitted

to the jury, which also seems to be correct.   The decision of
the case must turn upon a very different question.

It is admitted that so much of the proceeds of the sale as
was necessary for that purpose, was applied to the payment
of the debt due to Farmer, and the balance was paid to the
guardian of the plaintiff, who was then a minor, and that part
of that balance was expended by the guardian for the plain-
tiff's support and maintenance.   The guardian resigned and
a receiver of the estate of the minor was appointed, under
the statute, and the balance of the proceeds of the sale re-
maining in the guardian's hands was paid to him.   When
the plaintiff attained his majority, the receiver settled with
him and paid over the balance in his hands.   The plaintiff
admits the receipt of the money from the receiver, but he
says that, upon taking it from him, he asked him if receiving
the money would be a ratification of the sale made by W. C.
Bowen, and that the receiver referred him to his attorney, a
lawyer of high standing, who was familiar with all of the
facts, and who advised him that it would not be a ratification
of the sale, and that, acting upon the advice of the attorney,
and with no actual intention of ratifying the sale, he accepted
the money, and at the time of doing so he expressed his inten-
tion to bring this suit.   This, it seems to us, is a fair and full
statement of the facts to be gathered from the record in the
case.

It is perfectly clear that, notwithstanding what the plain-
tiff may have said or what he intended at the time he took the
money, which was a part of the proceeds of the sale, his re-
ceipt of it was a ratification of the sale to the defendant and a
complete waiver in law of all irregularities in the conduct
of the sale and of any lack of authority in Bowen, there may
have been, for the reason assigned, that is, the absence of any
request from Farmer to make the sale.   When the plaintiff
received the money he did something that was utterly incon-

sistent with his right to repudiate or disaffirm the sale. When a party has the right to ratify or reject, he is put thereby to his election, and he must decide, once for all, what he will do, and when his election is once made, it immediately becomes irrevocable. This is an elementary principle. *Austin v. Stewart,* 126 N. C., 525. He could not accept the money derived from the sale and at the same time reserve the right to repudiate the sale. *Kerr v. Sanders,* 122 N. C., 635; *Mendenhall v. Mendenhall,* 53 N. C., 287. It is familiar learning that when two inconsistent benefits or alternative rights are presented for the choice of a party, the law imposes the duty upon him to decide as between them, which he will take or enjoy, and after he has made the election he must abide by it, especially when the nature of the case requires that he should not enjoy both, or when innocent third parties may suffer if he is permitted afterwards to change his mind and retract.

The doctrine of election frequently, though not exclusively, arises in case of wills, but the principle in its very nature seems to apply equally to other instruments and transactions. 2 Story Eq. Jur., sec. 1075, and notes. In that section, Judge Story defines the doctrine most clearly: "Election in the sense here used is the obligation imposed upon a party to choose between two inconsistent or alternative rights or claims in cases where there is a clear intention of the person from whom he derives one (or of the law), that he should not enjoy both. Every case of election, therefore, presupposes a plurality of gifts or rights, with an intention, express or implied, of the party who has a right to control one or both (or of the law) that one should be a substitute for the other. The party who is to take has a choice, but he can not enjoy the benefits of both."

When the plaintiff elected to take the proceeds of the sale, this was an unequivocal act from which the law conclusively

infers an intention to ratify the sale. It is what a party does, and not what he may actually intend, that fixes or ascertains his rights under the law. He can not do one thing and intend another and very different and inconsistent thing. The law will presume that he intended the legal consequences of what he does, or, in other words, that his intention accords in all respects with the nature of his act. It is therefore the thing done and not the motive with which it is done that must afterwards determine the rights of the party as against third persons whose interests may be affected. It can make no difference whether the doctrine of election applies strictly and technically to the facts of this case. The reason underlying it does apply, and when there is the same reason there should be the same law. Besides, Bowen was, in fact, the agent of both parties, the plaintiff as representing the original trustor, and the creditor, W. H. Farmer, and when he acted contrary to the terms of the deed by which his agency was created, the plaintiff could affirm or repudiate his act, and having chosen not to repudiate, he must be bound by it. Every principle of fair dealing requires the strict enforcement of the rule binding him to the ratification which results from his election to take the money.

We should need no argument or authority to establish the proposition just stated, but many decided cases can easily be cited to support it. An apt illustration of the principle, which is peculiarly applicable to the facts of our case, will be found in the case of *Smith v. Gray,* 116 N. C., 311, where it was held by this Court that an infant who, after reaching his majority, acquires knowledge of irregularities rendering the sale of his lands voidable by him, and nevertheless receives the residue of the purchase price, thereby ratifies the sale and validates the purchaser's title, as much so as if the sale had been regularly conducted in strict conformity with the terms of the power or authority under which it was sold.

In the case of *Moore v. Hill,* 85 N. C., 218, the Court said that if the owner of a chattel which has been sold as the property of another, accepts or retains to his own use a note which he knows the vendee has given for the purchase money, he is as surely estopped by his act of acceptance as if he legally sold and transferred the chattel to the vendee. In accordance with the same principle, it has been held that the acquiescence of a mortgagor in the conduct of a sale under a power contained in the mortgage, and particularly in the terms of it, will cure any defect or irregularity in the sale, resulting from the failure of the mortgagee to comply with the directions of the power, and will give validity to the sale, and consequently a perfect title to the purchaser. *Lunsford v. Speaks,* 112 N. C., 608. What stronger evidence of acquiescence and ratification can be furnished than the receipt of the purchase money? *Sanderlin v. Thompson,* 17 N. C., 539; *Syme v. Badger,* 92 N. C., 706.

The fact that the plaintiff relied upon the advice of counsel does not improve his condition. He can not visit the evil consequences of that advice upon the defendants, who were not in any way responsible for it. If he was induced by it to adopt a course of action which he would not have taken but for the advice, it is his misfortune and not their fault, and they can not be made to suffer for it. *Oates v. Munday,* 127 N. C., 439; *State v. Downs,* 116 N. C., 1064. The advice of counsel excuses no man, unless, perhaps, in cases where the question involved is whether he acted in good faith or with reasonable prudence, and perhaps in some other instances not now necessary to be mentioned, but never in a case like the one at bar. In such a case, he takes and acts upon the advice at his peril, for it can change neither the facts nor the law to the prejudice of other interested parties.

It has been held by this Court that when a party disobeys an injunction under advice of counsel, he can not thereby dis-

charge himself from the penalty for the disobedience, even though he may have acted in good faith.    *Green v. Griffin,* 95 N. C., 50.

The decisive act of receiving the money with knowledge of the facts determines his election, and estops him now to say that no request was made previous to the sale, if such is the fact.    He has ratified and confirmed the sale, and, as to him, the defendants have a good and unimpeachable title. W. H. Farmer, by his conduct at the sale, and by receiving the amount of his debt out of the proceeds, also ratified the sale.    *Cassidy v. Wallace,* 102 Mo., 580.

PER CURIAM:    Judgment Affirmed.